UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TERRY SADLER AND THREESA SADLER as Next Friend of JOHN DOE, a Minor,<br><br>Plaintiffs,<br><br>vs.<br><br>GREENVILLE INDEPENDENT SCHOOL DISTRICT, a governmental unit,<br><br>Defendant. | Civil Action No.:<br><br>JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiffs, Terry Sadler and Threesa Sadler ("Plaintiffs"), as Next Friend for John Doe ("John"), a Minor, and file this original complaint, complaining of Defendant, GREENVILLE INDEPENDENT SCHOOL DISTRICT ("the School District" or "GISD"), and would respectfully show as follows:

### I.   INTRODUCTION

1.  This case is necessary because the School failed to protect John from repeated sexual abuse by another student, even after Plaintiffs informed the School of the sexual abuse and even after the School promised to protect John. Plaintiffs seek damages, injunctive relief and attorney fees from the School.

### II.   PARTIES

2.  TERRY SADLER AND THREESA SADLER are competent adults residing in Hunt County, Texas. John Doe is their child, also residing in Hunt County, Texas.

3.  GISD is a state-chartered organization whose purpose is to govern the affairs of the public schools in Hunt County, Texas. The School District is responsible for the policies, practices, and customs of its schools, as well as the hiring, training, supervision, control, and discipline of its

teachers, principals, and other personnel. GISD may be served with process by serving John C. Kelso, President of the Greenville Independent School District, Board of Trustees, 4004 Moulton Street, Greenville, Texas 75401.

### III. JURISDICTION AND VENUE

4. This lawsuit asserts claims under 42 U.S.C. § 1983, the 14th Amendment of the United States Constitution, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Additionally, the Court has supplemental jurisdiction over any state constitutional and statutory claims pursuant to 28 U.S.C. § 1367.

5. Venue is appropriate in this judicial district pursuant to 28 U.S.C. §§1391(b) and 1391(c) because all parties reside in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### IV. FACTS COMMON TO ALL CAUSES OF ACTION

#### A. The November 6, 2018 Sexual abuse

6. On November 6, 2018, a GISD employee saw another student sexually abusing JOHN. At that moment, JOHN was attending the KGJ STEM Academy campus for GISD located at 1316 Wolfe City Dr., Greenville, Texas 75401. The GISD employee reported that he walked into the bathroom where another student was touching JOHN's penis. Upon information and belief, the GISD employee made no report to authorities as required under the law. The other student put soap on JOHN's penis and was forcibly trying to masturbate JOHN against his will.

7. GISD took no action to prevent this from occurring, despite knowledge of similar instances, similar claims, and similar disputes in the past few years. In fact, when Threesa Sadler spoke with Principal Stacey Kluttz on November 7, 2018, Kluttz indicated that she had "heard nothing concerning the sexual abuse of November 6, 2018."

8. Further, JOHN's parents spoke with GISD's assistant superintendent Sharon Boothe. She promised that the School District would file a Child Protective Services report immediately. Ms. Boothe also promised that GISD would craft and implement a customized safety plan for JOHN.

Boothe promised JOHN's parents that: the other student would not be unsupervised in the bathroom; that GISD would protect JOHN ensuring that he would never be alone with the other student; all appropriate staff at the School and GISD would be made aware of the abuse; and that she and the GISD counselor would check in on JOHN periodically throughout the school day to see if he was in distress.  These promises by the GISD were lies.  GISD did not file a timely report with Child Protective Services as promised.  Nor did the School District create or implement a safety plan as promised.  The GISD did not call law enforcement.  The GISD did not change its policies or procedures.  GISD's promises that it would take appropriate action were lies.  Neither the GISD employees nor KGJ took any actions to prevent JOHN from suffering this type of abuse in the future. Rather take appropriate action, GISD engaged in a cover-up and repeated attempted to brush these shocking and abusive events under the proverbial rug.

9. Almost immediately after this instance of abuse, JOHN began to exhibit symptoms of sexual abuse.  He began chewing through his shirts.  He became deathly afraid to go to the bathroom.  In fact, his fear was intense that he defecated in his own pants rather than go to the bathroom at school. JOHN said he was fearful someone would force him to have "bubbles on his guts."  JOHN refers to his penis as "guts" and the "bubbles" are the soap that was forced upon him and placed on his penis.

10. JOHN's parents confirmed that after the November 6, 2018 sexual abuse:
- ☐ KGJ GISD employees did not file a timely report of the abuse;
- ☐ GISD no action to investigate, protect, or implement any safety protocols to protect JOHN or any of the students at GISD;
- ☐ GISD did not follow-up with JOHN's parents;
- ☐ GISD contacted no law enforcement officials;

**B.     The March 2019 Sexual abuse by the Same Student:**

11. On March 12, 2019, the very same student once against sexually assaulted JOHN while he was in GISD's care.  GISD personnel found JOHN in the bathroom with his pants down.  Video evidence shows that JOHN's abuser left the bathroom shortly before GISD's teacher came into the bathroom.  Rather than help JOHN, GISD's teacher chastised JOHN which further

exacerbated the abuse JOHN had suffered.  Again, JOHN had "bubbles put on his guts" and GISD did NOTHING to protect him.

12. On March 13, 2019, Plaintiffs confronted Principal Kluttz again.  Plaintiffs asked Klutz for the written safety plan, the CPS report, and any documentation related to JOHN's abuse occurring in November 2018.  There was none.  Instead, Klutz admitted that the School District had failed to implement a safety plan to protect JOHN. Principal Kluttz admitted that the School District did not make a timely report to Child Protective Services and that the GISD has failed to file a report with any law enforcement agency. Principal Kluttz apologized by saying "I'm sorry, I failed you," but this hollow apology did not protect JOHN or any other student at GISD.

13. Because the GISD would not, JOHN's parents went to GISD police department to report the incident.  Plaintiffs spoke with Chief Ramon Rodriguez and Officer Nathan Baker.  GISD police have informed JOHN's parents that video evidence confirms that JOHN's abuser left the bathroom after abusing JOHN. The GISD Police Department also confirmed that they "were never informed" by any of the GISD mandatory reporters.  GISD Police were angry.  The Officers informed Plaintiffs that if they knew of the sexual abuse, they could have retrained, taught, investigated and prevented the second sexual abuse. Obviously, JOHN suffered sexual abuse on March 12, 2019 which the GISD Police could have prevented by implementing basic protective measures.  But they could not protect JOHN because the School District never reported the November 6, 2018 sexual abuse incident. Instead, GISD and their employees made it more dangerous by doing nothing, lying to JOHN's parents, and abandoning their responsibilities to JOHN.

14. JOHN's parents spoke with Assistant Superintendent Boothe again.  She confirmed that she was "unaware" of anything.  Again, she incorrectly "believed" that School District personnel filed timely reports and implemented a safety plan.  JOHN's parents also spoke with Chip Gregory, Chief of Schools for GISD.  Mr. Gregory tried to assure Plaintiffs that he was "working on it.  The Plan is not on paper.  Just trust me."

15. On March 15, 2019, Threesa Sadler corresponded with Principal Kluttz, who refused to remove JOHN's abuser from the same GISD campus where JOHN attends.  Kluttz refused to

share any reports, plans, or protection provisions in place for JOHN. Instead, Kluttz' had no viable safety plan. Rather, Klutz and GISD's plan included singling out JOHN and forcing him to use a separate restroom than other children. GISD's tone deafness to the sexual abuse suffered by JOHN further alienated him from his classroom, classmates, others at GISD, and ostracized him and his parents.

16. JOHN's parents and GISD Police have confirmed that GISD eventually drafted a flimsy report from the November 6, 2018 sexual abuse incident which the School District filed with Child Protective Services, but only after Plaintiffs questioned GISD's intentions for a week. GISD's untimely report to Child Protective Services did not even contain basic information such as the name of the victim and the name of the abuser. Instead, GISD falsely claimed the names of the students were "unknown," thereby preventing Child Protective Services from properly investigating or otherwise reacting to the report. In other words, even when GISD made its tardy report of the incident to Child Protective Services, its report lacked good faith and did not provide enough information to allow Child Protective Services to investigate the incident.

17. JOHN has expressed to Plaintiffs and anyone willing to listen that "he is afraid of school and freaked out." JOHN's feeling is understandable, given GISD's vapid and anemic response to a sexual abuse against a child in GISD's care and custody.

18. These sexual abuses have taken JOHN's innocence from him and nothing can restore it. JOHN is now facing years of recovery, battling feelings no six year old should have to face. JOHN questions how this could have happened to him. JOHN is now in therapy. He is trying to cope with the emotional and mental trauma he suffered because GISD did not protect him from sexual abuse by another GISD student.

**C.    GISD allowed a toxic, illegal, and dangerous environment to exist at JOHN's School:**

19. GISD abandoned JOHN when he needed an adult teacher to protect him. Even when JOHN's parents pushed for answers, GISD pushed back. GISD went so far as to instruct the GISD Police Department to terminate any investigation into the incident. Truly, the GISD did not want to ask the difficult questions to understand what happened and how it could have prevented this sexual

abuse. Adding insult to injury, GISD abruptly shutdown Plaintiffs' access to their own child's school records by blocking Plaintiffs' access to Skyward. GISD's shutdown of Plaintiffs' access to Skyward was contemporaneous with its demand for GISD to address the abuse suffered by JOHN. Skyward is internet device that allows open lines of communication between the school and families. Students and parents can login to Skyward to view attendance, grades, schedules and calendars. Since GISD provided no explanation for banishing Plaintiffs from Skyward, the only remaining explanation is GISD punishes parents who complain about sexual abuse perpetrated on their children.

20. Since GISD and its employees refused and/or failed to timely report JOHN's sexual abuse, the Plaintiffs contacted local law enforcement to open an investigation. On information and belief, GISD instructed the GISD police department to conduct NO investigation. Instead, they informed the chief of police for GISD to stop investigating as the GISD's lawyers would conduct an investigation. To date, the Plaintiffs have never had an investigation open by GISD's police department, which purports to have jurisdiction over Plaintiffs' claims to law enforcement. GISD's actions in this regard is a further violation of Plaintiffs' constitutional and due process rights.

21. If this abuse against JOHN was not enough, there is circumstantial evidence demonstrating other sexual misconduct that has occurred in prior years. Plaintiffs are informed and believe that this is not the first time that GISD has allowed this exact type of abuse to occur. When similar claims were raised with GISD, GISD told those parents to leave GISD. Like JOHN's abuse, GISD's cavalier attitude and actions toward sexual abuse is shocking. Evidence shows that GISD's indifference to protecting students is systemic and prolonged. Other GISD students have suffered the exact type of abuse that JOHN suffered. Certainly, the lack of oversight, training, and proper policies has resulted in an environment friendly to the sexual abuse of children at GISD. By this lawsuit, Plaintiffs seek to reverse GISD's culture of indifference. Plaintiffs seek injunctive relief requiring that GISD properly investigate allegations of sexual abuse, rather than proffer half-baked investigations or, worse yet, deliberate indifference to allegations that one student repeatedly sexually assaulted another student. Through injunctive relief, Plaintiffs seek a remedy that will protect their child and other children from unchecked predatory behavior.

## V. GISD REFUSES TO FOLLOW POLICIES AND PROCEDURES OR ENACT ONES TO PROTECT STUDENTS FROM SEXUAL ABUSE

22. The Plaintiffs prepared a number of procedures for GISD to consider enacting, all of which GISD refused to evaluate. Instead, GISD claims that its existing policies and procedures are appropriate and followed for JOHN. Not so. Any policies or procedures in place at GISD were either forgotten, never learned, ignored, or refused to follow.

- Complaints against GISD will either be

    A) Referred over to the Hunt County District Attorney for opening and handling an investigation for any GISD employees who failed to report, for either Abuse/neglect, or Child Endangerment; OR
    B) these complaints are handed over to a law enforcement agency (not the GISD police department) for investigation into any criminal wrongdoing

- Change GISD policy to fast track the appeal of cases involving sexual abuse, sexual violence, and sexual assault against a student or staff (as GISD drags its feet for months).

- Additions to existing policy that GISD did not follow:

    A) Add "sexual abuse" to the school Safety Transfer Policy

- Recognition that every accusation of sexual abuse by a student be taken seriously;

- Immediately contacting both parents regarding the accusation and providing those parents with a detailed accounting of the accusations.

- Opening an investigation into the accusations appointing a school district official to investigate the accusations. The official should not be an employee of the staff of the campus where the investigation is to take place.

- Scheduling an in-person meeting with the student's parents and the district official who will be investigating the accusation.

- Detailing the investigation procedures, how that investigation will take place and how the parents will be notified as to the results of the investigation to the parents during this meeting.

- Parents should have the option of immediately removing their child from the classroom until such time as the investigation concludes; without any penalty to the child. Reasonable accommodation should be made to minimize the impact to the student.

If the accusations are found to be unproven at the time, then:

- Implementing a plan of action that includes observable guidelines to ensure that there is never any unaccompanied contact between the students.
- Conducting random spot checks during extracurricular activities to ensure that the guidelines are being followed.
- Conducting periodic follow-up meetings with the student and her/his parents to ensure that there had not been any inappropriate action or contact with the person who was accused.

If the accusations were found to be true, then:

- Immediately notifying the applicable law enforcement authorities;
- Immediate removal of the abuser from the classroom and campus where the victim is in attendance;
- Notify all parents of students that were potential victims; and
- Document the accusations.

23. Despite multiple pleas from the Plaintiffs for common sense procedures, GISD has refused to honestly and openly engage on the failures to enact procedures and policies to protect it's the children, including JOHN.

24. To the extent GISD had developed any policies and procedures in regards to sexual abuse, discrimination, and harassment of a student, such policies and procedures were wholly ineffective or GISD, by and through its agents, including GISD personnel, the principal and those acting under their authority, among others, consciously ignored these policies and procedures.

## VI.    NOTICE TO GISD HAS BEEN GIVEN

25. Prior to bringing this action, Plaintiffs gave detailed and specific notice of their claims against GISD.  GISD maintains that it did nothing wrong.  GISD maintains that its policies and procedures are appropriate.  GISD maintains that its handling of JOHN's sexual abuse is perfectly acceptable.  Now comes this action.

## VII.   CAUSES OF ACTION

### A.    Violations of 42 U.S.C. § 1983

26. Plaintiffs incorporate by reference as if fully set forth herein, the allegations in each of the previous paragraphs.

27. This claim is based on a Substantive Due Process violation in contravention of the Fourteenth Amendment to the U.S. Constitution pursuant to the 42 U.S.C. §1983.  Violations of the Fourteenth Amendment by local government state actors create a cause of action under 42 U.S.C.

§1983, which provides that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

28. The U.S. Supreme Court held that Congress intended §1983 to apply to local government entities as well as to persons. *Monell vs. New York City Department of Social Services*, 436 U.S. 658, 691-694.

29. In Texas, "schoolchildren [like JOHN] have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right…" *Doe vs. Taylor Independent School District*, 15 F.3d 443, 445 (1994). As the Court stated in *Taylor*, "If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical sexual abuse …" *Id.* at 451.

30. Additionally, under the law, the GISD is legally responsible for supervisory failures and failures to train that result in abuse if those failures manifest "callous disregard," or "deliberate indifference" to the constitutional rights of that child. *Id.* at 453. GISD has a broad obligation to supervise all its employees and has liability under Section 1983 for supervising (or in this case, failing to supervise) its employees in a manner that manifests callous disregard or deliberate indifference to the Constitutional rights of its students.

31. The Fifth Circuit has held that supervisors can be liable for gross negligence or deliberate indifference to violations of their subordinates. *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (1986). Further, the U.S. Supreme Court has held that municipalities are responsible under §1983 for a failure to train its employees those results in the violation of a plaintiff's right… *City of Canton v. Harris*, 489 U.S. 378, 381.

32. Here, GISD created an environment where JOHN could be sexually abused. GISD increased the danger that JOHN would be abused again by, among other things, lying to the Plaintiffs; refusing to promptly report to law enforcement the abuse; by refusing to create or enact

the safety plan it promised to the Plaintiffs; by instructing the GISD police department to stop any investigation once reported by the Plaintiffs; and by alienating JOHN and depriving him of a safe educational environment.

33. GISD's failure to follow appropriate policies and prompt procedures for handling JOHN's abuse further deprived JOHN of his liberty interest in his bodily integrity. It is unclear exactly what appropriate policies GISD actually followed since it refuses to be transparent with the Plaintiffs and has instructed its GISD police department to stop any investigation.

34. GISD is further liable to Plaintiffs under Section 1983 because GISD failed to train and supervise its personnel regarding how to properly react to a report of sexual abuse on one of its campuses. The depths of the lack of training and supervision is astounding in this modern day. The lack of training and supervision in this case rises to the level of callous disregard or deliberate indifference to a six year old boy's right to be free from sexual abuse at school.

35. Due to a combination of arrogance, callousness, lack of training and supervision, GISD personnel failed to appreciate the high level of probability that JOHN's abuser would repeat the sexual abuse. Property instructed, honest, and attentive GISD personnel could have prevented this tragedy. More importantly, GISD did not train its personnel or did not supervise its personnel in such a way that it would take steps to protect JOHN, the victim. Instead, GISD personnel forced JOHN, the victim, to accommodate the assailant by forcing him to use a "special bathroom" in the nurse's quarters. After the second sexual abuse, GISD personnel were so poorly trained and supervised, they chastised JOHN when they found him the bathroom with his trousers down. This proves that personnel were completely unaware of what had happened to JOHN months earlier. The abuse suffered by JOHN was severe and pervasive and GISD had actual knowledge of the danger yet did nothing to prevent further abuse from occurring to JOHN. GISD's actions have deprived JOHN of access to his education and an abuse free environment.

36. GISD personnel did not know or GISD did not supervise its personnel so that they would notify GISD's very own police force that a student committed a sexual abuse on its campus. Instead of taking advantage of a police force specifically designed to protect student, GISD personnel instructed the policy force to refrain from investigating the sexual abuse. What's even

more shocking is that GISD personnel are *mandatory reporters* under Texas Family Code section 261.101. Thus, GISD failed to train its personnel to comply with even the most basic Texas law designed to protect children – that a "report is required when a person has cause to believe that a child has been adversely affected by abuse or neglect." Texas Family Code § 261.101. Even a 10 year old child knows that police exist to investigate alleged criminal conduct.

37. GISD personnel did not understand the importance of conducting a prompt investigation of the allegations. Nor did GISD personnel know to thoroughly document the incident. GISD did not train its personnel to utilize the resources around it to help JOHN. For example, GISD did not train its personnel to immediately involve Child Protective Services. GISD only did so after Plaintiffs pestered them to do so.

38. GISD failed to create any organized plan to protect JOHN. It followed no checklist; it followed no prescribed action plan. Rather, GISD ignored the event and acted as if it never happened which lead to a repeat of the exact same sexual abuse.

39. All these shameful facts illustrate GISD's callous disregard and deliberate indifference to JOHN's fundamental right to be free from sexual abuse while attending a public elementary school. GISD's response to JOHN, JOHN's parents, and others in the past have been unreasonable and shameful. Rather than swift justice, understanding, cooperation, transparency, and willingness to change or enact new or updated procedures, GISD's shows a pattern of deliberate indifference with its stance.

40. GISD further punished JOHN and the Plaintiffs by counting his absences to school as a result of seeking counseling treatments as "unexcused absences."

41. GISD's actions have led directly to JOHN now facing severe emotional and mental trauma. As a result of Plaintiffs' and JOHN's deprivation of his constitutional rights, Plaintiffs and JOHN suffered emotional and physical injuries and suffered economic and noneconomic damages. Plaintiffs seek those damages in this case.

### D.    Violations of 20 U.S.C. § 1681 – Title IX

42. Plaintiffs incorporate by reference as if fully set forth herein, the allegations in each of the previous paragraphs.

43. United States Code Chapter 20, section 1681, known as Title IX, provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

44. The implied right of action under Title IX supports a claim for monetary damages. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 76 (1992).

45. In this case, GISD is liable for JOHN's sexual abuse because school officials who had a duty to protect JOHN knew of the abuse and had the power to act to end the abuse but failed to do so. GISD did not take remedial action of any kind, even though GISD officials knew remedial action was necessary to protect JOHN from future abuse. Rather than taking appropriate and swift remedial action, GISD lied to the Plaintiffs about creating a safety plan and reporting. GISD's actions in this regard led directly to an increase in the danger JOHN faced on a daily basis.

46. Therefore, Plaintiffs allege that GISD, by and through the acts and omissions of its agents, including Boothe, Kluttz, and others not yet identified, was deliberately and consciously indifferent to the sexual abuse suffered by JOHN all in violation of his rights pursuant to Title IX.

47. In addition, and in the alternative, Plaintiffs further allege that the failures of GISD to have policies, procedures, practices, and customs in place to assure that JOHN was not a victim of sexual abuse, discrimination, and harassment violated his rights pursuant to Title IX.

48. As a result of Plaintiffs' and JOHN's deprivation of his rights under Title IX, Plaintiffs and JOHN suffered emotional and physical injuries and suffered economic and noneconomic damages. Plaintiffs seek those damages in this case.

## VIII. ATTORNEY FEES

49. Defendants' conduct as described in this complaint and the resulting damage and loss JOHN has necessitated JOHN's retaining Kelley | Clarke, PC. JOHN is, therefore, entitled to recover from Defendants an additional sum to compensate for a reasonable fee for such attorneys' services in the preparation and prosecution of this action, as well as a reasonable fee for any and all appeals to other courts. In this regard, JOHN claims entitlement to attorneys' fees and costs under the fee-shifting provisions of 42 U.S.C. §1988.

IX. **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request that this Court grant the following relief:

a) Injunctive relief in the form of a mandatory injunction requiring Defendant to properly train, instruct and supervise its personnel regarding allegations of sexual abuse at any of its schools;

b) Compensatory damages in an amount to be proved at trial;

c) Attorney fees under any law that provides for the recovery of attorney fees;

d) Any further relief to which Plaintiffs may be entitled.

X. **REQUEST FOR JURY TRIAL**

Plaintiffs request a jury trial for all claims for which a jury trial is permitted by law.

DATED: June 27, 2019

KELLEY | CLARKE, PC

By: _/s/ Matthew Clarke_
Dugan P. Kelley
State Bar No. 24066627
dugan@kelleyclarkelaw.com
Matthew M. Clarke
State Bar No. 24070965
matt@kelleyclarkelaw.com
301 S. Coleman Street, Suite 20
Prosper, Texas 75078
Ph. (972) 253-4440
Fx. (866) 611-9852
Attorneys for PLAINTIFFS TERRY SADLER AND THREESA SADLER as Next Friend of John Doe, a Minor